# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 20, 2002

## STATE OF TENNESSEE v. LYNN L. DAVIS

### Direct Appeal from the Circuit Court for Hickman County
### No. 02-5010CR-II     Russ Heldman, Judge

### No. M2002-01061-CCA-R3-CD - Filed May 13, 2003

The defendant, Lynn L. Davis, pled guilty to robbery, a Class C felony, and was sentenced as a Range II, multiple offender to eight years in the Department of Correction. In his appeal, he argues that the trial court erred in failing to apply mitigating factors and in denying alternative sentencing. Following our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

John H. Henderson, District Public Defender; and Vanessa Pettigrew Bryan, Assistant Public Defender, for the appellant, Lynn L. Davis.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Michael J. Fahey, II, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Wearing a green trench coat, gloves, a "Yogi Bear" mask, and armed with a loaded pistol, the defendant robbed the East Food Center in Hickman County on November 2, 2001. He gave the store clerks a pillowcase to put the money in. Witnesses who saw the defendant leave the store gave a description to the Hickman County Sheriff's Department of the defendant and the vehicle he was driving. Less than half a mile from the robbery, an officer spotted at Kelly's Corner Café a car matching the description of that of the defendant's. Officers found the defendant in the café eating a shrimp dinner and, after advising him of his constitutional rights, asked if they could search his vehicle, to which he agreed. Inside the trunk, officers found a loaded Ruger .357 Magnum handgun, a green trench coat, gloves, a Yogi Bear mask, and a pillowcase containing a large amount of cash and checks.

At the sentencing hearing, Detective Jimmy Barnett of the Hickman County Sheriff's Department testified that the defendant gave a written statement which stated, "The reason I did this is because I didn't have any money or food. I had a Marine Corps overcoat, a .357 Magnum pistol, a Yogi Bear mask and a wool ski mask. End of statement." Detective Barnett also testified that the defendant had taken between $1900 and $2000 from the store.

Several witnesses testified on the defendant's behalf at the sentencing hearing. Carolyn Morris, the defendant's second cousin, testified that he was an only child and his parents had been in their mid-forties when he was born. The defendant's mother was "overprotective in a way that wasn't normal." After he graduated from high school, the defendant worked in a fire tower as a lookout for several years but was laid off when his position was eliminated. His father died in 1985, leaving the defendant his house and five acres of land, as well as a sum of money. Other than doing occasional odd jobs, the defendant had not worked for the past fourteen years. His family was unaware of his dire circumstances because the defendant was the type of person, according to Ms. Morris, who would not ask anyone for anything and had been raised not to "talk about [his] needs." She said that the defendant had never been in trouble before and that his "situation is unique . . . as far as the criminal world or the legal world."

The defendant's first cousin, Ray Overby, testified that the defendant had been "just a big, ol' kid all his life. He couldn't do nothing on his own." He said the defendant had a "real good" reputation in the community and was not an aggressive person.

Horace Litton, a neighbor and friend of the defendant, testified that the defendant had worked at a feed store, and the defendant's father always went with him. The defendant occasionally helped Litton's family haul hay, but the defendant's father also helped to justify his son getting paid. He said that the defendant was "absolutely not" a violent person and that he had been unaware of the defendant's financial situation. Litton did not believe that the defendant "had been taught to be productive and survive in the present world."

The fifty-year-old defendant testified at the hearing that he had depleted the funds his father had left him about two or three weeks before he committed the robbery. He had not eaten for three days and did not know what else to do to get food, so he robbed the store to get money. Questioned about not having a job, the defendant said he had not applied for any "public" jobs and that his last job had been for a farmer two years earlier, but he had not been able to find a job since then. He testified that he did not know about government assistance and did not think to ask the church for help. When asked about the robbery, the defendant asserted that he did not take the gun out of his pocket. Asked as to why he even took a pistol in the store at all, instead of just pretending to be armed, the defendant responded, "Yeah, that's what I should of [sic] done. I shouldn't of [sic] done none of it."

## ANALYSIS

The defendant argues his eight-year sentence is excessive and that the trial court erred by failing to apply certain mitigating factors and in denying probation or alternative sentencing.

## I. Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

## II. Length of Sentence

The defendant pled guilty to robbery, a Class C felony, with the plea agreement providing that he would be sentenced as a Range II, multiple offender instead of a Range I offender, the sentence range for which is a minimum of six years and a maximum of ten years. Tenn. Code Ann. § 40-35-112(b)(3).

In determining the appropriate sentence for a felony conviction, the sentencing court, if there are enhancement and mitigating factors for a Class C felony, must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors. See Tenn. Code Ann. § 40-35-210(e) (Supp. 1999). There is no mathematical formula of evaluating the enhancement factors to calculate the appropriate sentence. See generally State v. Boggs, 932 S.W.2d 467, 475

(Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted).

As a Range II, multiple offender, the sentencing range for the defendant was six to ten years. The trial court explained why an eight-year sentence was being imposed:

> In deliberating, based upon the evidence presented today and, also, the testimony and demeanor of the witnesses and the testimony and demeanor [of] yourself, Mr. Davis, the court finds that there are enhancement factors that are sustained by the proof overwhelmingly. And those enhancement factors are thus: One, the offense involved more than one victim; two, the defendant possessed or employed a firearm during the commission of the offense, a firearm or other deadly weapon, but a firearm, a deadly weapon during the commission of the offense; three, the court finds that the defendant . . . had no hesitation about committing a crime when the risk to human life was high.
>
> And the court finds four enhancement factors: This crime was committed under circumstances under which the potential for bodily injury to a victim was great, and in this case it was to two victims. Therefore, theoretically, the court could find five enhancement factors, but, basically, the court finds four enhancement factors. And, therefore, if it ended there the court would find that this man, Mr. Davis, should be sentenced to ten years incarceration with the Tennessee Department of Corrections.
>
> The court has considered all the evidence and the next step is giving due consideration to any statutory and non-statutory but acceptable mitigating factors in this case, and able counsel has offered some mitigating factors for the court's consideration. This is how the court looks at those proposed mitigating factors: The court rejects the mitigating factor that Mr. Davis was motivated by a desire to provide necessities for himself because Mr. Davis voluntarily and intentionally placed himself in that situation. It was not a situation that was imposed upon him by circumstances beyond his control, so that mitigating factor, with all due respect . . . is rejected by the evidence and by this court's understanding of that factor.
>
> . . . .

-4-

The court also finds that Mr. Davis did acknowledge his guilt and has shown a willingness to assume responsibility for his conduct, which is a second mitigating factor. However, the court does not find that Mr. Davis is sufficiently repentant and contrite. Mr. Davis' attitude on the witness stand was the attitude of an "aw-shucks, got caught" attitude more than deep repentance, and had to be led into the answering of those questions by counsel.

The court was also discouraged when the general was making his argument and was pointing out that Mr. Davis could've done other things if he needed to eat that were even against the law other than what he did, and during that argument Mr. Davis was over here grinning about all that, and I watched that and I was bothered by that. And I take that into consideration because the court must consider the credibility of the defendant in making these determinations.

Therefore, the court, when all is said and done, finds that the evidence supports only two mitigating factors and, therefore, the sentence for this man is eight years.

In setting the defendant's sentence at eight years, the trial court applied enhancement factors (3), the offense involved more than one victim; (9), the defendant possessed a firearm or other deadly weapon during the commission of the offense; (10), the defendant had no hesitation about committing a crime when the risk to human life was high; and (16), the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(3), (9), (10), (16) (1997).

On appeal, the defendant does not dispute the application of these enhancement factors but argues that the trial court erred by not applying, as additional mitigating factors, the following: "[t]he defendant has the capacity to adjust to a law abiding citizen in that he has no criminal record and Defendant has never been tested on probation or other alternative sentencing"; "[t]he defendant has shown remorse for his criminal conduct"; and the defendant's crime was motivated by a desire to provide necessities for himself. We will consider this argument.

In its findings, the trial court rejected the defendant's requested mitigating factor that his actions were motivated by a desire to provide necessities for himself. The court stated:

The court rejects the mitigating factor that Mr. Davis was motivated by a desire to provide necessities for himself because Mr. Davis voluntarily and intentionally placed himself in that situation. It was not a situation that was imposed upon him by circumstances beyond his control, so that mitigating factor, with all due respect . . . is

rejected by the evidence and by this court's understanding of that factor.

We cannot conclude that the trial court erred in refusing to apply this mitigating factor. We note that, according to the affidavit of indigency executed by the defendant, he owned a home, which he valued at $34,000, and a 1968 Chevelle Malibu valued at $1000. Accordingly, at the time of the offense, the defendant had assets of approximately $35,000 but, apparently, no cash. However, even if the defendant did not have these assets, we still could not conclude, based upon the facts of this case, that the defendant committed the crime to provide necessities for himself. In State v. Jaun Jerome Bryant, No. 01C01-9805-CR-00217, 1999 WL 308649, at *3 (Tenn. Crim. App. May 18, 1999), this court determined that the defendant was not motivated to commit the crime by a desire to provide necessities for his family because he committed the crimes before his son was born. Also, the defendant in Bryant had the ability to obtain a job, but chose instead to sell drugs and stolen cars while his mother financially supported his child. Likewise, in State v. Matthew DeLoss Larsen, No. M2000-01675-CCA-R3-CD, 2001 WL 1218578, at *7 (Tenn. Crim. App. Oct. 12, 2001), this court concluded that the defendants did not commit the crime to provide for their needs as evidenced by the fact that they purchased beer and cigarettes with the stolen money.

Similarly, we cannot conclude that the defendant's crime was motivated by a desire to provide for his necessities. Even if the shrimp dinner, the defendant's first purchase after the robbery, were classified as a "necessity," he took in the robbery not just the price of the dinner but between $1900 and $2000. In fact, it would appear that he could have sold his .357 Magnum and his vehicle, rather than use them to commit a robbery. Accordingly, we conclude that the trial court appropriately declined to apply this factor.

The defendant asserts that the trial court erred in not applying as a catch-all mitigating factor that he showed remorse for his criminal conduct. See Tenn. Code Ann. § 40-35-113(13) (1997). During the sentencing hearing, when asked if he was "sorry for this," the defendant responded that he was "very sorry" and would not do it again. However, the trial court observed that the defendant did not appear to be remorseful:

> The court was also discouraged when the general was making his argument and was pointing out that Mr. Davis could've done other things if he needed to eat that were even against the law other than what he did, and during that argument Mr. Davis was over here grinning about all that, and I watched that and I was bothered by that. And I take that into consideration because the court must consider the credibility of the defendant in making these determinations.

Based upon the testimony and the trial court's findings as to the defendant's behavior during the sentencing hearing, we cannot conclude that the trial court erred in not applying as a mitigating factor that the defendant was remorseful for his conduct.

The defendant also argues on appeal that the trial court erred in not applying as a catch-all mitigating factor that he "has the capacity to adjust to a law abiding citizen in that he has no criminal record and Defendant has never been tested on probation or other alterative sentencing." The trial court did not directly address this claim, but the record reflects that the defendant had been previously convicted in 1986 of DUI, resulting in his payment of a fine and costs, as well as being placed on probation for eleven months and twenty-nine days. Even if the trial court erred in not addressing this mitigating factor, the enhancement factors were properly applied and would have outweighed the two mitigating factors applied by the trial court as well as this factor, if applied.

Accordingly, we conclude that the record supports enhancing the defendant's sentence to eight years from the presumptive minimum of six years.

### III. Denial of Alternative Sentencing

The trial court explained why alternative sentencing was being denied and the defendant was to be incarcerated for his sentence:

> Now, the question is whether Mr. Davis, under the statute, is presumed to be a favorable candidate for alternative sentencing. According to Tennessee law, this presumption can be rebutted by several things, one of which is confinement necessary to avoid depreciating the seriousness of the offense, or is confinement particularly suited to provide an effective deterrence to others likely to commit similar offenses.
>
> Based upon the testimony in this case, the court finds that this is a very serious offense. The way it was done is very serious to this court and certainly to this community, and that confinement is necessary to avoid depreciating the seriousness of this offense. Furthermore, the court finds that confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses.
>
> The way that Mr. Davis went about his efforts to obtain a way to allegedly feed himself was an extreme method and, therefore, the court finds that that needs to be deterred in this community and, therefore, the presumption has been effectively rebutted, in this court's judgment.
>
> Therefore, the court denies the request for probation and sentences Mr. Davis to eight years in the Tennessee Department of Corrections with no fine[.]

The defendant argues that he should have been placed on probation or granted alternative sentencing. Since the defendant was sentenced as a Range II, multiple offender, he was eligible for probation but was not entitled to a presumption that he was a favorable candidate for alternative sentencing. Tenn. Code Ann. §§ 40-35-303(a), -102(6) (1997). The burden was on the defendant to show that he was a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). To meet this burden, a defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id.

In support of his claim that he should have been granted alternative sentencing, the defendant argues that his crime was not "violent, horrifying, shocking, reprehensible, offensive, or otherwise of such an excessive or exaggerated degree that the nature of the offense outweighs all factors favoring probation."

In determining that the defendant should be confined rather than granted alternative sentencing, the trial court was guided by Tennessee Code Annotated section 40-35-103(1), which provides that the trial court may order confinement when:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Applying this section, the trial court determined that confinement was "necessary to avoid depreciating the seriousness of the offense," and "to provide an effective deterrence to others likely to commit similar offenses." In State v. Hooper, 29 S.W.3d 1 (Tenn. 2000), our supreme court set

out a list of nonexclusive considerations to guide the courts of this state in ascertaining whether incarceration was appropriate for purposes of deterrence:

> (1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
>
> (2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
>
> (3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.
>
> (4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.
>
> (5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Id. at 10-12.

In this matter, there being no proof as to the frequency of robberies in the area or the amount of publicity this matter received, the only deterrence consideration which would appear to be applicable is that the defendant's crime was an intentional act which netted him an amount of cash far in excess of that needed to provide necessities, which he argues was the motivator for the robbery. However, the trial court also grounded its determination that incarceration was appropriate upon the finding that it was necessary to avoid depreciating the seriousness of the offense. The undisputed facts being that the defendant took a loaded pistol into a convenience store, with two clerks behind the counter, robbed them of $2000, and the trial court finding that the defendant was unremorseful at the sentencing hearing, we conclude that the record justifies the determination that incarceration was appropriate.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE